IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. _____2:19-cv-00033_____

| | |
|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES FISH AND WILDLIFE SERVICE, | ) ) ) |
| Defendant. | ) ) ) |
| _____ | ) |

**COMPLAINT**

[Fed. R. Civ. P. 7]

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     This Freedom of Information Act ("FOIA") suit challenges Defendant United States Fish and Wildlife Service's ("FWS" or "the Service") unlawful and unreasonable delay and improper withholding of documents in response to Plaintiff Southern Environmental Law Center's ("SELC") requests for public records regarding the conservation and management of North Carolina's critically endangered red wolf.

2.     The Service's delays and refusals to respond to these FOIA requests have occurred and are ongoing against the backdrop of the Service's violations of the Endangered Species Act, as found by this Court in *Red Wolf Coalition v. U.S. Fish and Wildlife Service*, 346 F. Supp. 3d 802, 815 (E.D.N.C. Nov. 4, 2018).

3.     Because of the Service's lack of transparency regarding the agency's changing management of the wild red wolf population, SELC has requested records from FWS twice over

1

the past two years.  On December 5, 2017, and again on February 19, 2019, SELC sent FOIA requests to the FWS pertaining to the management of the critically endangered red wolf in North Carolina.  Upon information and belief, these records are largely housed in the Service's Manteo, North Carolina, and Raleigh, North Carolina offices, which oversee FWS's management of the wild red wolf population in eastern North Carolina.

4.      FWS has not made a determination informing SELC "of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions," Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n, 711 F.3d 180, 186 (D.C. Cir. 2013), on SELC's December 5, 2017 FOIA request. FWS provided SELC with 20 documents in full and 4 documents in part on February 12, 2019—more than a year after the request was made—and has not provided any additional records since that partial response.

5.      FWS has not made a determination as to the scope of its production or withholding of documents, or provided any records responsive to the February 19, 2019 FOIA request.

6.      FWS has violated FOIA by (1) failing to promptly provide requested records and make a determination within twenty workdays of receiving the December 5, 2017 FOIA request; (2) withholding documents responsive to the December 5, 2017 FOIA request without adequate justification; and (3) failing to promptly provide requested records and make a determination within twenty workdays of receiving the February 19, 2019 FOIA request.  SELC seeks a declaration that FWS has violated FOIA and an order compelling FWS to provide all nonexempt, responsive documents without further delay.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) (FOIA), because a substantial number of the requested agency records are likely situated in this District. The Red Wolf Recovery Program is based out of the Manteo, North Carolina office, with supervision from the FWS Raleigh Field Office.  Pete Benjamin, the Raleigh Field Office Supervisor, was listed as the agency contact in FWS's partial denial letter responding to SELC's December 2017 FOIA request.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

8.      Venue is properly vested in this Court under 28 U.S.C. § 1391(e) because a substantial part of the event and omissions which gave rise to this action—the creation, storage, and withholding of public records—occurred in this District.

9.      Venue is proper in this Division because while no party resides in the Northern Division, the instant matter arises from actions and records occurring within this Division.  Local Civil Rule 40.1(c)(1).  Specifically, SELC's claims arise from FWS's unlawfully delayed production and unreasonable withholding of records created and stored within the Red Wolf Recovery Area, including those likely maintained at the FWS office in Manteo, North Carolina, located in Dare County.

10.     This Court has the authority to award costs and attorneys' fees under 28 U.S.C. § 2412 and 5 U.S.C. § 552(a)(4)(E).

## THE PARTIES

11.     Plaintiff SELC is a 501(c)(3), nonprofit public interest environmental law firm with a focus on six southeastern states.  SELC maintains a registered office located at 601 West

3

Rosemary Street, Suite 220, Chapel Hill, NC 27516-2356. The FOIA requests at issue in this suit were initiated from that office.

12.     SELC works collaboratively with more than 100 partner groups that depend on SELC's legal expertise to complement and strengthen their efforts. SELC works with its partners and clients exclusively on a pro bono basis.

13.     SELC has long worked to protect the endangered red wolf population in eastern North Carolina. SELC analyzes polices and projects affecting the red wolf population, advocates for red wolf conservation with government officials, educates the public about the status and management of the red wolf, and represents clients concerned with the plight of the red wolf.

14.     SELC communicates broadly with the public through a wide variety of media, including its website, press releases, reports, interviews with the media, and presentations to other organizations and the general public. SELC has used many of these tools to communicate information and raise public awareness about the endangered red wolf.

15.     SELC is a "person" within the meaning of FOIA. 5 U.S.C. § 551(2).

16.     Defendant FWS is a federal agency located within the United States Department of the Interior ("DOI"). The Service is responsible for administering the Endangered Species Act's ("ESA") provisions for the conservation and recovery of the red wolf, including the world's only wild population in North Carolina.

17.     FWS is an "agency" within the meaning of FOIA and accordingly subject to FOIA's disclosure requirements. 5 U.S.C. §§ 551(1), 552(f)(1). Upon information and belief, FWS possesses and controls the records sought by SELC in the FOIA requests at issue.

## LEGAL BACKGROUND

18.     The Freedom of Information Act, 5 U.S.C. § 552, reflects "a general philosophy

4

of full agency disclosure unless information is exempted under clearly delineated statutory language." Dep't of Air Force v. Rose, 425 U.S. 352, 360–61 (1976) (quoting legislative history) (internal quotation marks omitted). FOIA "shines a light on government operations 'to check against corruption and to hold the governors accountable to the governed.'" Coleman v. Drug Enforcement Admin., 714 F.3d 816, 818–19 (4th Cir. 2013) (quoting Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)). FOIA requires agencies of the federal government, including FWS, to promptly release records to the public upon request, unless one of nine specific statutory exemptions applies.  5 U.S.C. §§ 552(a)(3)(A), 552(b).

**Agencies Must Make Determinations and Promptly Release Records**

19.     "[T]he time provisions of the Act are central to its purpose." Hayden v. U.S. Dep't of Justice, 413 F. Supp. 1285, 1288 (D.D.C. 1976). FOIA requires federal agencies to "promptly" make records available upon request. 5 U.S.C. § 552(a)(3)(A); e.g. Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n, 711 F.3d 180, 189 (D.C. Cir. 2013) (explaining FOIA's "comprehensive scheme that encourages prompt request-processing and agency accountability"); Coleman, 714 F.3d at 824 ("Congress expressed a clear intent to ensure that FOIA requests receive prompt attention from the applicable agencies.").  Agencies must "determine . . . whether to comply" with a request within 20 working days of receiving the request, and they must "immediately notify" the requester of that determination. 5 U.S.C. § 552(a)(6)(A).

20.     To make a "determination" under FOIA, "the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the

5

requester that it can appeal whatever portion of the 'determination' is adverse." Citizens for Responsibility & Ethics in Washington, 711 F.3d at 188.

21.     Agencies within the DOI may extend the deadline to respond in order to seek clarification from a requester, but the deadline can be tolled only as long as "the time it takes [the requester] to respond to one written communication . . . reasonably asking for clarifying information." 43 C.F.R. § 2.18(a).

22.     DOI regulations provide that if FWS denies a FOIA request, the requester is entitled to appeal the determination within ninety workdays to the FOIA Appeals Officer within the agency. See 43 C.F.R. § 2.58(a). FOIA requires agencies to rule on administrative appeals within twenty workdays. 5 U.S.C. § 552(a)(6)(A)(ii).

23.     An agency may grant itself an extension of the time allotted for an initial response or an appeal determination of up to ten workdays "in unusual circumstances." Id. § 552(a)(6)(B)(i). In doing so, an agency must provide written notice of the extension to the request that explains the nature of the "unusual circumstances" and states "the date on which a determination is expected to be dispatched." Id.

24.     Under FOIA, if the agency seeks to extend the time allotted for an initial determination further than ten workdays, it must work with the requester to modify the scope of the request so it can be fulfilled within the ten-workday extension or arrange an alternative time period. Id. § 552(a)(6)(B)(ii); see also 43 C.F.R. § 2.19(b)(1).

**Exemptions from Disclosure under FOIA**

25.     While an agency may sometimes withhold documents according to statutory exemptions specified under FOIA, such exemptions must be construed narrowly, and the agency bears the burden of establishing that withheld information is exempt from release. 5 U.S.C. §

6

552(a)(4)(B); <u>City of Va. Beach v. U.S. Dep't of Commerce</u>, 995 F.2d 1247, 1252 (4th Cir. 1993). The agency may withhold documents only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)." 5 U.S.C. § 552(a)(8)(A)(i)(I).

26.      In order to meet this requirement, an agency must describe each withheld document and explain how and why the claimed exemption applies. <u>E.g.</u>, <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 218–19 (D.C. Cir. 1987); <u>Mead Data Cent., Inc. v. U.S. Dep't of Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977).

27.      Under FOIA, an agency may withhold from disclosure responsive inter- or intra-agency documents that would not be available by law to a party in litigation with the agency. 5 U.S.C. § 552(b)(5) ("FOIA Exemption 5"). FOIA Exemption 5 is restricted to "inter-agency and intra-agency memorandums or letters," that is, communications shared within or between federal agencies. <u>Id.</u>

28.      Although Exemption 5 to FOIA incorporates the deliberative process privilege, deliberative documents cannot be categorically withheld. Deliberative documents must be disclosed unless the agency reasonably determines that disclosure of that particular document would cause foreseeable harm to an interest protected by the deliberative process privilege. <u>Id.</u> § 552(a)(8)(A)(i)(I); <u>Rosenberg v. U.S. Dep't of Defense</u>, 342 F. Supp. 3d 62, 76–79 (D.D.C. 2018).

29.      Deliberative documents may not be withheld under Exemption 5 when they show "the reasons for a policy actually adopted." <u>See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 161 (1975).

7

30.     When an agency denies, in whole or in part, a request for records under FOIA, the agency must provide any "reasonably segregable portion" of each record after deleting any portions that are exempt under the statute.  5 U.S.C. § 552(a)(8)(A)(ii)(II).

31.     An agency's failure to respond to a FOIA request or administrative appeal of a FOIA decision within the statutory deadline constitutes constructive exhaustion of the requestor's administrative remedies. Id. § 552(a)(6)(C)(i).

## FACTUAL BACKGROUND

32.     SELC has long advocated for the conservation of the endangered red wolf and relied on public information from FWS in order to be informed of the status of the wild red wolf population.

33.     On December 5, 2017, more than a year and a half ago—and in the midst of ongoing litigation, rulemaking, and Congressional action regarding the world's only population of red wolves in North Carolina—SELC submitted a FOIA request regarding the Service's conservation and management of red wolves.  On February 19, 2019, more than seven months ago, SELC submitted a second FOIA request regarding the Service's conservation and management of red wolves.

34.     FWS has withheld the requested documents from SELC and has failed to make a determination on SELC's FOIA requests within 20 days as required by FOIA.  FWS's unlawful withholding of documents has harmed and continues to harm SELC by preventing SELC from having access to current, accurate information about the wild red wolf population and the agency's management of this endangered species.

8

## A.  **The Endangered Red Wolf**

35.     The red wolf (*Canis rufus*) has been pushed to the edge of extinction.  Once common throughout the eastern and south-central United States, most red wolf populations were destroyed by the early 20th Century as a result of intensive predator control programs and the degradation and alteration of habitat.  Today, the eastern North Carolina population of red wolves constitutes the only wild population of red wolves in the world and numbers as few as 14 animals.

36.     The red wolf was first designated an endangered species in 1967 under the Endangered Species Preservation Act of 1966, the precursor to the federal ESA, 16 U.S.C. § 1531 et seq.

37.     In 1987, four pairs of red wolves bred in captivity were released into the Alligator River National Wildlife Refuge in eastern North Carolina as an experimental population under Section 10(j) of the ESA, 16 U.S.C. § 1539(j).  As a result of the coordinated, science-based work of FWS and other entities, the population of wild red wolves successfully grew to 100 individuals in the late 1990's.

38.     The population was able to maintain these numbers for more than a decade.  From 2002-2014, the population was never estimated below 100 individuals, peaking at 130 wolves around 2006.

39.     In 2011-2012 the Service documented seventeen breeding pairs of red wolves in the wild.  In 2013-2014 only eight wild breeding pairs were reported.  On information and belief, the wild population of red wolves did not have any breeding pairs in 2019. This population decline has occurred as the Service ceased previously-proven management methods and issued

9

lethal take permits to private landowners.  See generally, Red Wolf Coalition v. U.S. Fish & Wildlife Serv., 346 F. Supp. 3d 802, 815 (E.D.N.C. Nov. 4, 2018)

40.     During this "catastrophic" decline, Red Wolf Coalition v. U.S. Fish & Wildlife Serv., 210 F. Supp. 3d 796, 804 (E.D.N.C. Sept. 29, 2016) (granting plaintiffs' motion for preliminary injunction), FWS also stopped releasing information about red wolves that it previously provided to the public, including its Red Wolf Recovery Program Quarterly reports. The last such report released to the public was from January through March of 2014.  FWS previously regularly updated annual red wolf mortality and population information on its website, but began updating those numbers infrequently in 2015 and ceased releasing such information in 2016.

41.     In November 2015, SELC brought suit on behalf of three nonprofit conservation groups, challenging FWS's actions regarding management of the wild red wolf population.

42.     On May 23, 2017, the Service published an advance notice of proposed rulemaking and notice of intent to prepare a National Environmental Policy Act document for North Carolina's wild red wolf population in the Federal Register.  Endangered and Threatened Wildlife and Plants; Nonessential Experimental Population of Red Wolves (*Canis rufus*) in North Carolina, 82 Fed. Reg. 98, 23518 (May 23, 2017).

43.     On June 28, 2018, FWS published in the Federal Register a proposed rule for the replacement of the regulations for North Carolina's wild red wolf population, the availability of a draft environmental assessment, opening of comment period, and announcement of public hearing.  See Endangered and Threatened Wildlife and Plants; Proposed Replacement of the Regulations for the Nonessential Experimental Population of Red Wolves in eastern North Carolina, 83 Fed. Reg. 30,382 (June 28, 2018).

10

44. On November 4, 2018, this Court held that the Service violated the Endangered Species Act in suspending previously-successful conservation measures, including releasing red wolves into the wild and sterilizing coyotes to prevent hybridization, while also issuing lethal take permits to private landowners. Red Wolf Coal. v. U.S. Fish & Wildlife Serv., 346 F. Supp. 3d 802, 815 (E.D.N.C. Nov. 4, 2018)

45. On November 29, 2018, FWS announced that "[i]n light of a federal court ruling . . . the U.S. Fish and Wildlife Service is extending its review of a proposed rule to adapt its management of red wolves in the state." U.S. Fish & Wildlife Serv., Press Release, Nov. 29 2018, https://www.fws.gov/southeast/news/2018/11/service-extends-red-wolf-review-in-north-carolina/.

**B. FWS's Failure to Respond to SELC's FOIA Requests**

46. In the face of limited public information about the wild red wolf population and the Service's ongoing and planned management and recovery changes for the red wolf, SELC turned to FOIA requests to obtain updated information about the status and management of the species.

*1. FWS's Failure to Timely Process SELC's December 2017 FOIA Request*

47. On December 5, 2017, SELC filed a FOIA request seeking records regarding FWS's management of the wild red wolf population in northeastern North Carolina (hereinafter "December 2017 FOIA Request"). See Exhibit 1. Specifically, SELC requested records pertaining to FWS's Advance Notice of Proposed Rulemaking, FWS's efforts to identify additional red wolf reintroduction sites, FWS's review of the species status of the red wolf, government studies regarding endangered red wolf genetics and hybridization, and statements by

11

Congress regarding red wolf recovery efforts. This request was sent to FWS by e-mail and by U.S. mail to FWS Regional FOIA Coordinator Tiffany McClurkin.

48. In an e-mail dated December 13, 2017, FWS confirmed receipt of the December 2017 FOIA Request and informed SELC staff that the request had been assigned the FOIA tracking number FWS-2018-00274. See Ex. 2.

49. On January 12, 2018, nearly one month later, FWS contacted SELC asking for clarification regarding items in the request. Specifically, FWS asked for clarification about which statements made by the U.S. House of Representatives in 2017 regarding the endangered red wolf and by the U.S. Senate regarding the red wolf recovery program were covered by the request. Additionally, FWS asked whether SELC staff would be willing to retrieve the requested "documents received in response to the ANPR" online from www.regulations.gov. See Ex. 3 at 9.

50. That same day, SELC promptly responded with clarifying language about the scope of the requested statements, including examples of types of responsive documents that should be considered as covered in the request, and agreed to retrieve the "documents received in response to the ANPR" online. See id. at 9.

51. Over the next nine months, SELC contacted FWS multiple times to request an update on the status of the December 2017 FOIA Request, asking when FWS anticipated responding to the request and noting that more than twenty workdays had elapsed since the request was submitted. See id. at 6-8.

52. FWS's responses did not provide SELC with any determination of the scope of documents responsive to SELC's December 2017 FOIA Request or any date for when SELC could expect to receive such records. Instead, FWS informed SELC that responsive records

"will need to go through the process of multiple reviews, including but not limited to the Solicitor's Office prior to signature. We hope to have a response to you soon." See Ex. id. at 8. On January 24, 2018, FWS stated "[o]ur estimated processing completion date . . . is after February 16, 2018 . . . ." See id. at 8.

53.    On September 7, 2018, SELC e-mailed FWS Region Four FOIA staff to request a specific timeline for the expected release of records. See id. at 5-6.

54.    On September 11, 2018, SELC and FWS FOIA staff spoke via telephone regarding the status of the December 2017 FOIA request. FWS sent an e-mail to memorialize the conversation on October 10, 2018. This e-mail stated that FWS was in possession of an unknown number of records responsive to the December 2017 FOIA Request and explained that FWS had agreed to provide monthly productions on or around the 11th of every month, starting on October 11, 2018. See id. at 4.

55.    In the same e-mail, FWS FOIA staff asked for an extension on the first production of documents, explaining that "there are several review channels that Red Wolf requests have to be vetted through." See id. at 4.

56.    On October 12, 2018, SELC granted the requested extension. In doing so, SELC asked whether FWS could provide the first production of documents by the following week. SELC also asked whether the extension would affect the production of documents scheduled for November 11, 2018. See id. at 3.

57.    On October 17, 2018, FWS replied that it would "do [its] best to have a response to you by next week" and "definitely keep you posted." FWS informed SELC that it did not believe the extension would affect the next production of documents, but would be "sure to let you know" if FWS needed additional time. See id. at 2.

13

58.     Having still not received an initial determination or production of documents, on October 29, 2018, SELC requested an update on the status of the request, noting that FWS had previously indicated that SELC would have a response by the end of previous week. See id. at 2.

59.     On October 30, 2018, FWS replied that it was currently coordinating with the "Offices of Record" before sending the documents to the Solicitor's Office for review.  FWS also informed SELC that it had started to review documents for the second production due November 11, 2018 and "hop[ed] to get a response to you soon." See id. at 1-2.

60.     On November 14, 2018, two weeks later, SELC requested an update on the status of the production, noting that SELC was now waiting for FWS to provide two overdue batches of records. See id. at 1.

61.     FWS replied to inform SELC that it was sending the first batch of records to the Solicitor's Office for review that day, November 14, 2018.  FWS FOIA staff also informed SELC that it would email the Ecological Services FOIA Coordinator regarding the batch of records due on November 11, 2018 and "provide you with an update as soon as possible."  See id. at 1.

62.     On February 5, 2019, SELC emailed FWS to follow-up on an unreturned voicemail left on February 1, 2019 regarding the multiple overdue batches of documents to the December 2017 FOIA Request.  See Ex. 4.

63.     FWS responded suggesting it could provide an update on February 8, 2019 as to the batch of documents due October 11, 2018. See id. at 4.

64.     On February 8, 2019, FWS emailed to inform SELC that it would be sending a partial response to the December 2017 FOIA Request on February 11, 2019. See id. at 3.

## 2. FWS's Partial Denial of SELC's December 2017 FOIA Request

65. On February 12, 2019, nearly three months later, SELC received an initial partial response for the December 2017 FOIA Request. The partial response contained only 20 documents in full and 4 documents released in part.

66. A partial denial letter, attached as Exhibit 5, accompanied these documents and stated that FWS was withholding another 44 documents in full. The letter claimed that these documents are subject to the deliberative process privilege pursuant to FOIA Exemption 5; however, the letter did not provide any information to justify the withholding of these documents.

67. The partial denial letter also stated that "[o]ther documents that we believe to be responsive still need to be reviewed for possible withholding and will be provided in subsequent responses." See id. The partial denial letter did not elaborate as to the scope of the documents still under review.

68. FWS's only attempt to account for the withheld documents was a boilerplate description of materials that an agency may withhold under Exemption 5, stating that such withheld materials "are both pre-decisional and deliberative. They do not contain or represent formal or informal agency policies or decisions. They are the result of frank and open discussions among parties, and public dissemination of this information would have a chilling effect on the agency's deliberative process." See id. at 2. The letter also includes the blanket statement that "[w]e reasonably foresee that disclosure would harm an interest protected by one or more of the nine exemptions to the FOIA's general rule of disclosure."

69. Upon information and belief, FWS did not individually determine whether release of the withheld documents responsive to SELC's December 2017 FOIA request would harm an

15

interest protected by a FOIA exemption and instead categorically determined that disclosing *any* of the withheld documents would have a general chilling effect without identifying which protected interest was implicated.

70.     With respect to the partially-withheld documents, the letter relies on additional general language about the deliberative process privilege, claiming that the Regional Solicitor determined that the documents were partially exempt from disclosure because "[t]he information redacted pursuant to Exemption 5 includes privileged information involving discussions on the matters of policy between subordinates and superiors and were used to guide the Agency in the decision making process." See id. at 1–2.

71.     Upon information and belief, some of the redacted material and withheld documents contain information expressing the actual reasons for decisions being made regarding red wolf management.

### *3. FWS's Failure to Produce Subsequent Responses to the December 2017 FOIA Request*

72.     Meanwhile, on February 8, 2019, FWS informed SELC that the Ecological Services FOIA Coordinator would send FWS an additional partial response to the December 2017 FOIA Request no later than February 15, 2019, and that SELC should expect more information regarding record production dates within the next week. See Ex. 4 at 2.

73.     On February 13, 2019, SELC emailed FWS seeking clarification regarding the partial response, specifically asking whether SELC would be receiving additional partial responses or whether the partial response was also a final response.  FWS did not answer this question, but continued to correspond with SELC over the next several months regarding the subsequent responses to the December 2017 FOIA Request. See id. at 1; see also Ex. 5.

74.     On April 1, 2019, SELC received a partial response to an unrelated FOIA request submitted on November 29, 2018.[1] The partial response to the November 29, 2018 request included 43 documents, including 20 documents included in the initial partial response to SELC's December 2017 FOIA Request that FWS sent in error. FWS clarified that the documents were not intended as a second response to the December 2017 FOIA Request. See Ex. 6.

75.     On April 5, 2019, FWS updated SELC regarding the status of a second partial response to the December 2017 FOIA Request, stating that the Ecological Services Field Office FOIA Coordinator would provide a second partial response to the FWS FOIA Coordinator by April 12, 2019. See Ex. 7 at 4.

76.     SELC followed-up with FWS about whether it had received the records from the Ecological Services FOIA Coordinator on April 26, 2019. See id. at 2.

77.     FWS responded on May 3, 2019 that it had not received the records yet and that the Ecological Services Field Office now had "a goal of getting them to my office by Thursday, May 9, 2019. [sic] after ES routing and review." See id. at 1.

78.     On May 22, 2019, SELC requested a status update on the second partial response to the December 2017 FOIA Request, noting that the request had been pending for over 1.5 years.  See id. at 1. FWS responded that staff was "working on your FOIAs." See Ex. 8.

79.     On September 18, 2019, SELC requested a status update on the December 2017 FOIA Request, noting it had not received any records since it last contacted FWS.  FWS responded that a partial response was anticipated to be sent to the Region 4 FWS FOIA office by

---

[1] The November 29, 2018 FOIA request, represented by tracking number FWS-2019-00203, is not at issue in this complaint and does not pertain to red wolves. SELC's December 2017 FOIA request was assigned tracking number FWS-2018-00274, and SELC's February 2019 FOIA request was assigned tracking number FWS-2019-00455.

17

September 27, 2019, for additional review.  <u>See</u> Ex. 7. at 1. FWS did not provide a date by which the records would be released to SELC.

80.    As of the date of this Complaint, FWS has not provided SELC any additional records responsive to the December 2017 FOIA Request or made a determination as to the scope of documents responsive to SELC's request or the scope of documents to be withheld.

### 4. SELC's Administrative Appeal of the December 5, 2017 FOIA Request

81.    On April 29, 2019, SELC submitted a timely administrative appeal of the partial denial of the December 2017 FOIA request.  The appeal was sent to the DOI FOIA Appeals Officer via e-mail and U.S. Mail. The appeal letter is attached as Exhibit 9.

82.    FWS's response to SELC's appeal was due twenty workdays from the filing of the appeal, on approximately May 28, 2019.  <u>See</u> 5 U.S.C. § 552(a)(6)(A)(ii).

83.    FWS failed to respond to SELC's administrative appeal of the December 2017 FOIA request within twenty workdays as required by FOIA.

84.    On July 16, 2019, SELC requested an update on the status of its appeal, noting that more than twenty workdays had elapsed.  FWS has not provided an update as of the date of this Complaint. <u>See</u> Ex. 10.

85.    Because of FWS's failure to respond to SELC's December 2017 administrative appeal within twenty workdays, SELC has constructively exhausted its administrative remedies and may seek relief from this Court.

### 5. FWS's Failure to Timely Process SELC's February 2019 FOIA Request

86.    SELC submitted a separate FOIA request on February 19, 2019 seeking records pertaining to FWS's management of critically endangered red wolves in North Carolina, specifically including requests related to FWS's red wolf rule proposed subsequent to SELC's

18

December 2017 FOIA Request and to the planned or completed trapping, collaring, or releasing of red wolves, coyotes, or red wolf-coyote hybrids in Northeastern North Carolina. See Ex. 11. This request was sent to FWS by U.S. mail to FWS Regional FOIA Coordinator Tiffany McClurkin.

87.     In an e-mail dated February 28, 2019, FWS confirmed receipt of the February 2019 FOIA Request and informed SELC staff that the request had been assigned the FOIA tracking number FWS-2019-00455. See Ex. 12

88.     Since submitting the request, SELC has asked for updates on the status of the request multiple times. Most recently, on September 18, 2019, SELC requested a status update on the February 2019 FOIA Request. When FWS responded, it provided requested updates for other FOIA requests, but did not provide any update on the February 2019 FOIA Request. See Ex. 7.

89.     As of the date of this Complaint, FWS has not provided SELC any records responsive to the February 2019 FOIA Request or made a determination on SELC's request.

### C.  FWS's Deliberative Process Privilege Policy Changes

90.     While SELC was pursuing its 2017 and 2019 FOIA requests about the endangered red wolf population, FWS was revising its application of the deliberative process privilege.

91.     A September 6, 2018 Memorandum to the U.S. Fish and Wildlife Service expresses a Department of Interior policy requiring the "coordination" of FOIA responses with the preparation of Administrative Records for decisions challenged under the Administrative Procedure Act, attached as Exhibit 13 (hereinafter the "Deliberative Process Memorandum"). This policy was in effect when the Service sent SELC the partial denial letter regarding the December 2017 FOIA request.

92.     The Deliberative Process Memorandum requires FOIA staff to "process FOIA requests in a manner most likely to preserve the consistency of information released under FOIA with information that could subsequently be included in an [Administrative Record]." Id. at 1.

93.     The Deliberative Process Memorandum further describes "categories of information and documents that should be considered for withholding in full or in part under [the] deliberative process privilege," and notes that "careful review" of FOIA responses is needed in order to "protect[] our decisions" and avoid discovery during related litigation. Id. at 5.

94.     The Deliberative Process Memorandum also incorporates by reference an earlier policy—the Foreseeable Harm Memorandum, attached as Exhibit 14—which itself creates an additional layer of review for deliberative documents: Whenever FOIA officers believe that disclosure of deliberative documents is appropriate, the Foreseeable Harm Memorandum requires them to consult again and "seek additional information" from other staff who may be able to provide a justification for withholding.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:

### FWS's Failure to Make a Determination and Promptly Provide Responsive Records to SELC's December 5, 2017 Request Violates the Freedom of Information Act

95.     SELC incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

96.     As of the date of this Complaint, FWS has provided only 24 documents in response to the December 2017 FOIA Request, and has not informed SELC of "the scope of the documents that the agency will produce, as well as the scope of the documents that the agency

20

plans to withhold under any FOIA exemptions." <u>Citizens for Responsibility & Ethics in Washington</u>, 711 F.3d at 186.

97. FWS is in violation of FOIA and the Department of the Interior's implementing regulations by failing to promptly provide responsive records and by failing to provide SELC with a determination of which records will be disclosed and which will be withheld within the mandatory time limits established by FOIA and its implementing regulations. *See* U.S.C. § 552(a)(6)(A), (a)(6)(B); 43 C.F.R. §§ 2.16(a), 2.19(a).

98. By failing to provide SELC with all non-exempt responsive records to its December 2017 FOIA request, FWS has denied SELC's right to this information as provided by law under FOIA.

99. Unless enjoined by this Court to produce non-exempt, responsive records, FWS will continue to violate SELC's legal right to be provided with copies of the records which it has requested.

## SECOND CLAIM FOR RELIEF:

### FWS's Unexplained Withholding of Documents Responsive to SELC's December 5, 2017 Request Violates the Freedom of Information Act

100. SELC incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

101. FWS withheld numerous responsive documents from disclosure through its partial denial of SELC's December 2017 FOIA Request. In doing so, FWS cited the deliberative process privilege pursuant to FOIA Exemption 5 without justifying how the deliberative process privilege applies to the material in question and without making specific foreseeable harm determinations on individual documents.

21

102.     Upon information and belief, FWS also withheld records that as a matter of law do not cause foreseeable harm to an interest protected under Exemption 5 of FOIA.

103.     Pursuant to FOIA and well-established case law, FWS was required to describe withheld documents with sufficient detail to convey the nature of the documents, as well as explain how an exemption applied to permit the withholding of those documents.

104.     By failing to justify the withholding of documents pursuant to FOIA Exemption 5 through an adequate description of the withheld documents, and in withholding documents without making specific, proper foreseeable harm determinations, FWS unlawfully withheld and unreasonably delayed SELC's right to be provided with copies of the records which it has requested.

## THIRD CLAIM FOR RELIEF:

### FWS's Failure to Make a Determination and Promptly Provide Responsive Records to SELC's February 19, 2019 Request Violates the Freedom of Information Act

105.     SELC incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

106.     As of the date of this Complaint, FWS has failed to provide any records responsive to the February 2019 FOIA Request or inform SELC of "the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." Citizens for Responsibility & Ethics in Washington, 711 F.3d at 186.

107.     FWS is in violation of FOIA and the Department of the Interior's implementing regulations by failing to "promptly" provide responsive records and by failing to provide SELC with a determination of which records will be disclosed and which will be withheld within the

22

mandatory time limits established by FOIA and its implementing regulations. *See* U.S.C. § 552(a)(6)(A), (a)(6)(B); 43 C.F.R. §§ 2.16(a), 2.19(a).

108.    By failing to provide SELC with all non-exempt responsive records to its December 2017 FOIA request, FWS has denied SELC's right to this information as provided by law under FOIA.

109.    Unless enjoined by this Court to produce non-exempt, responsive records, FWS will continue to violate SELC's legal right to be provided with copies of the records which it has requested.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SELC respectfully requests that this Court:

A.  Issue a declaratory judgment that

    1.  Defendant FWS violated and is continuing to violate FOIA by failing to promptly provide records and make determinations under FOIA in response to SELC's requests;

    2.  Defendant FWS violated and is continuing to violate FOIA by improperly withholding non-exempt documents that are responsive to SELC's requests;

    3.  Defendant FWS violated FOIA by failing to explain how and why a particular exemption applies to each withheld document;

B.  Issue an injunction directing FWS to

    a.  Provide all nonexempt, responsive documents to SELC without further delay, including any and all records created or received up to the date of this Court's order;

23

b.  Produce an index identifying any documents or parts thereof that it withholds and the basis for the withholdings pursuant to 5 U.S.C. §§ 552(a)(8) and 552(b),  to SELC within fifteen workdays of the Court's order;

C.  Retain jurisdiction over this action to rule on any assertions by FWS that any responsive document cannot be found or is exempt from disclosure;

D.  Award SELC its reasonable attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E);

E.  Grant SELC such additional relief as the Court deems just and proper.

This the 14th day of October, 2019.

Respectfully submitted,

/s/ Ramona H. McGee
Ramona H. McGee
N.C. State Bar No. 47935
rmcgee@selcnc.org
Sierra B. Weaver
N.C. State Bar No. 28340
sweaver@selcnc.org

SOUTHERN ENVIRONMENTAL LAW CENTER
601 West Rosemary Street, Suite 220
Chapel Hill, NC 27516
Telephone: (919) 967-1450
Facsimile: (919) 929-9421

Attorneys for Plaintiff